UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Bardin Frederick Schlitz, | File No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| City of Minneapolis,<br>Daniel Diedrich, in his individual and official capacity,<br>Michael Terry, in his individual and official capacity,<br>Ty Jindra, in his individual and official capacity, and<br>Jeremy Foster, in his individual and official capacity, | |
| Defendants. | |

_____

For his Complaint against Defendants, Plaintiff states and alleges as follows:

## INTRODUCTION

1. Plaintiff Bardin Frederick Schlitz ("Plaintiff" or "Mr. Schlitz" herein) brings this action based on Defendants' unconstitutional seizure from his home of a number of items of personal property in December 2014, and on Defendants' subsequent deprivation of his property rights in the seized items without any due process.

2. Pursuant to 42 U.S.C. § 1983, Plaintiff seeks monetary damages, declaratory and injunctive relief, and such other relief as will redress unlawful searches, past and present deprivation, and to prevent further deprivation by

Defendants and their agents acting under color of law, of his rights under the United States Constitution and federal law.

## PARTIES

3. Plaintiff Bardin Frederick Schlitz is a resident of Hennepin County, Minnesota.

4. Defendant City of Minneapolis is a municipality located in Hennepin County, Minnesota. At all times relevant herein, the City of Minneapolis acted through its employees and agents acting within the course and scope of their employment and under color of law.

5. Defendant Daniel Diedrich is a sworn peace officer employed by the City of Minneapolis Police Department ("MPD" herein), and is sued in his individual and official capacity.

6. Defendant Michael Terry is a sworn peace officer employed by the MPD, and is sued in his individual and official capacity.

7. Defendant Ty Jindra is a sworn peace officer employed by the MPD, and is sued in his individual and official capacity.

8. Jeremy Foster is a sworn peace officer employed by the MPD, and is sued in his individual and official capacity.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. § 1983; 28 U.S.C. § 1343(a)(3); and 28 U.SC. § 1331.

10. Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(b).

## FACTS

11. On December 21, 2014, the Minneapolis Fire Department was called to Plaintiff's residence located at 4350 Blaisdell Avenue South in Minneapolis.

12. The MPD was called due to the discovery of a handgun by Fire Department personnel. Defendants Daniel Diedrich and Michael Terry responded to Plaintiff's residence. By the time officers arrived, there was no active fire. Officers discovered that the fire had been restricted to a two-foot radius on a couch on the ground floor. Defendant Terry reported the extent of the damage as "just the 2 ft. hole in the pillows. None of the structure itself received any smoke damage or burns."

13. Plaintiff was transported to the Hennepin County Medical Center for smoke inhalation. Fire Department personnel had reported that a loaded handgun was discovered beneath the couch. Defendant Diedrich reported that the handgun was found to be not loaded. The handgun, identified as a Smith & Wesson 9 millimeter semiautomatic pistol (hereinafter "S&W pistol"), was seized by officers and inventoried. Also seized were a Ziploc baggie containing two magazines, 11 rounds of .45 caliber ammunition, and 12 rounds of 9 millimeter ammunition.

14. After seizing the above items, Defendant Terry locked up the residence with a key. Defendant Terry then returned the key to Plaintiff personally at the Hennepin County Medical Center.

15. On December 29, 2014, Minneapolis Police Officers were called to Plaintiff's residence after a caller had reported that Plaintiff stated he was going to kill his neighbors. Defendants Ty Jindra and Jeremy Foster, as well as other officers unknown, responded to Plaintiff's residence.

16. At the residence, officers made contact with Plaintiff and ordered him out of his home at gunpoint. Plaintiff was then detained in a marked squad car. After Plaintiff was detained in a squad car, Defendants Jindra and Foster conducted a warrantless search of the residence. The following property was seized from the residence:

    a. J.R. Stupero blowgun

    b. Blowgun darts

    c. Knife in sheath

    d. 400 rounds of 9MM ammunition in four Winchester boxes

    e. 2,100 rounds of .45 caliber ammunition in 21 Winchester boxes

    f. 48 rounds of .45 caliber ammunition in Winchester box

    g. 11 rounds of .45 caliber ammunition in Federal box

    h. Kimber .45 caliber semiautomatic pistol

    i. Three magazines

      j. Kimber pistol case containing booklet

      k. Sheridan Products 5MM pump action pellet rifle

      l. Walmart receipt

      m. Sealed envelope containing DNA swab from pistol

17. For several months following the seizures of the aforementioned property, Defendants did not provide Plaintiff with any receipt or inventory for the property seized.

18. Plaintiff made repeated written requests, through his attorney, for the return of his property.

19. By a letter dated February 11, 2015, Plaintiff's attorney requested that all of his property be returned to him. The letter was sent to the MPD's Property and Evidence Unit. A courtesy copy was sent to MPD Chief Janee Harteau.

20. By March 4, 2015, Plaintiff received no response from MPD regarding his property. By a letter dated March 4, 2015, Plaintiff's attorney again requested that his property be returned to him. The March 4, 2015 letter was sent directly to Chief Harteau.

21. On March 18, 2015, Plaintiff's attorney received a letter from the Property and Evidence Unit stating that Plaintiff's "name and basic information has been entered into our Gun Release database for review and release." The letter further stated "[a]ll persons wishing to have firearms released go through the same process in order to provide consistency and impartiality. Please have

5

your client call (612) 673-2932 X4 so that we may process his request and return items to him in a timely manner."

22.     Plaintiff called the number identified in paragraph 16 and was informed that it could take up to 90 days before his firearms and ammunition would be returned to him.  There was no mention of Plaintiff's other property.

23.     On or about April 7, 2015, Plaintiff received an undated and unsigned letter from the Property and Evidence Unit.  Enclosed with the letter was a document for Plaintiff's completion and signatures authorizing the MPD to conduct a background investigation on him and further authorizing the Minnesota Department of Human Services to provide information about Plaintiff to the MPD. The authorization stated that the "information will be used by the law agency to complete a required background evaluation relating to [Plaintiff's] request to legally acquire a firearm."

24.     By a letter dated April 9, 2015, Plaintiff's attorney wrote to again request a return of Plaintiff's property.

25.     On April 24, 2015, Plaintiff's attorney received a letter from the Property and Evidence Unit.  The letter stated as follows:

> In any firearms case, the department queries the AFT (*sic*) by doing an E-Trace on any firearms in our custody.  In both referenced cases, with both of these weapons, the ATF shows the registered owners to be someone other than your client, Mr. Bardin Frederick Schlitz.  At this time we will not be releasing these firearms until true ownership can be determined.

6

26. By a letter dated April 24, 2015, Plaintiff's attorney wrote to the Property and Evidence Unit. The following is taken from the Plaintiff's April 24, 2015 letter:

> [T]he two above firearms were previously seized (for reasons not explained) from Mr. Schlitz's residence on November 18, 2008 (CCN 08-355, 191; PI No. 08-42415). For each firearm, Mr. Schlitz completed and executed a 'Weapons Identification Report' identifying how he came into lawful possession of each firearm. I am enclosing both reports with this letter for your reference. After identifying his ownership and possessory interest in each firearm, the same were then returned to Mr. Schlitz by your unit. I am enclosing with this letter a 'Firearm Eligibility Instructions' form with a hand-written notation approving the return of Mr. Schlitz's same firearms to him by a person identified only as 'David'.
>
> Since 2008 there has been no change in ownership over the firearms. Neither state nor federal law imposes a registration requirement on Mr. Schlitz for the firearms in question. *See* Minn. Stat. § 624.714, Subd. 20(d); 26 U.S.C. §§ 5841. Additionally, I would reiterate that your unit has previously returned the very same firearms to Mr. Schlitz under circumstances nearly identical to those now existing. I am therefore, again, renewing the request that Mr. Schlitz's firearms be returned to him. Additionally, I am asking that any and all other property seized from Mr. Schlitz's residence be returned to him without any further delay.

27. In mid-July, 2015, Plaintiff received correspondence identified as an "Owner Notification" dated July 8, 2015 stating "The Minneapolis Police Department has property belonging to you." Plaintiff was advised by the letter to obtain his property at 6024 Harriet Avenue South in the city of Minneapolis within 14 days of the date of the letter. The property described consisted of "blowgun w/ darts, misc. ammo, pellet rifle". The letter communicating to Plaintiff that he

could obtain his property (not including his two handguns) was dated 191 days after the property was seized.

## Count I
## Fourth Amendment Violations - Defendants Terry and Deidrich

28. Plaintiff incorporates the foregoing paragraphs as if set forth herein.

29. On December 24, 2014, Defendants Michael Terry and Daniel Deidrich, acting under color of law and within the course and scope of their employment with the MPD, searched Plaintiff's residence and seized a Smith & Wesson 9 millimeter semiautomatic pistol.

30. The search and seizure deprived Plaintiff of his right under the Fourth Amendment to be free from unreasonable searches and seizures. Plaintiff has no other effective means of enforcing his Fourth Amendment rights other than by seeking the requested relief.

31. As a result of Defendants' unlawful conduct, Plaintiff has experienced and continues to experience economic loss, humiliation, emotional distress, pain and suffering, and continues to be otherwise damaged due to the wrongful conduct of Defendants.

32. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to compensatory damages in an amount to be determined by a jury at trial, with interest, costs, disbursements, attorneys' fees, and other requested relief.

## Count II
## Fourth Amendment Violations - Defendants Jindra and Foster

33. Plaintiff incorporates the foregoing paragraphs as if set forth herein.

34. On December 29, 2014, Defendants Ty Jindra and Jeremy Foster, acting under color of law and within the course and scope of their employment with the MPD, searched Plaintiff's residence and seized all of the property identified at paragraph 11.

35. The search and seizure deprived Plaintiff of his right under the Fourth Amendment to be free from unreasonable searches and seizures. Plaintiff has no other effective means of enforcing his Fourth Amendment rights other than by seeking the requested relief.

36. As a result of Defendants' unlawful conduct, Plaintiff has experienced and continues to experience economic loss, humiliation, emotional distress, pain and suffering, and continues to be otherwise damaged due to the wrongful conduct of Defendants.

37. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to compensatory damages in an amount to be determined by a jury at trial, with interest, costs, disbursements, attorneys' fees, and other requested relief.

## Count III (Monell Claim)
## Fourteenth Amendment Violations - City of Minneapolis

38. Plaintiff incorporates the foregoing paragraphs as if set forth herein.

39. An individual is afforded Due Process under the 14th Amendment to the United States Constitution in regard to government confiscation of property.

40. Plaintiff's two handguns are property to which he is afforded 14th Amendment Due Process protection.

41. The City of Minneapolis, through the MPD, has a custom and policy under which it routinely and wrongfully confiscates handguns from their owners and subjects the handguns to electronic and forensic testing.

42. The two handguns at issue in this case were previously seized unlawfully by the MPD from Plaintiff's residence on November 18, 2008. On that date, the Hennepin County Sheriff's Office, assisted by the MPD, executed a search warrant at Plaintiff's residence seeking writings, computers, records, documents and the like as part of an investigation of Plaintiff for state assistance fraud. The warrant authorizing the search did not include firearms. Following the search, Plaintiff was never charged with a crime. Plaintiff's two handguns were returned to him by the MPD. While in the custody of the MPD, the handguns were subjected to federal firearm trace analysis administered by the Bureau of Alcohol Tobacco and Firearms (ATF).

43. Plaintiff's two handguns were wrongfully confiscated pursuant to MPD custom and policy on December 24 and December 29, 2014. The Smith & Wesson pistol was subjected to federal firearm trace analysis administered by the ATF. The Kimber pistol was subjected to the same, along with DNA swabbing and electronic fingerprint comparison analysis. The MPD has no policy or procedure in place allowing a person deprived of their firearms to be heard on or contest these types of tests and analyses.

44. Both of the unlawfully seized handguns are semiautomatic pistols. The MPD has a written policy mandating that any semiautomatic pistol be test fired prior to its release to its owner. This policy is contained in MPD Policy 10-416. The mandatory test-firing policy applies no matter how the handgun comes into the possession of the MPD. The MPD has no policy or procedure in place allowing a person deprived of their firearms to be heard on and contest this type of testing. The mandatory test-firing policy divested Plaintiff of any pre-deprivation process seeking the return of his pistols. Plaintiff was deprived of his property without a hearing before an impartial tribunal. Plaintiff continues to be so deprived.

45. As a result of the unlawful MPD custom and policy of illegally seizing and testing handguns, Plaintiff's rights were violated. Plaintiff's Due Process rights were also violated by the MPD's express policy of subjecting the firearms to several analyses all without affording the Plaintiff an opportunity to be heard on the topics of the initial seizure, the continued retention of the firearms, and the testing performed on the firearms. The retention of the handguns was undertaken pursuant to a written policy. Plaintiff is entitled to recover damages and to other relief from the City of Minneapolis pursuant to 42 U.S.C. § 1983 and <u>Monell v. Dept. of Social Services of the City of New York</u>, 436 U.S. 658 (1978).

46. As a result of Defendants' unlawful conduct, Plaintiff has experienced and continues to experience economic loss, humiliation, emotional

distress, pain and suffering, and continues to be otherwise damaged due to the wrongful conduct of Defendants.

47.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to compensatory damages in an amount to be determined by a jury at trial, with interest, costs, disbursements, attorneys' fees, and other requested relief.

### Count IV (Monell Claim)
### Fourteenth Amendment Violations - City of Minneapolis

48.     Plaintiff incorporates the foregoing paragraphs as if set forth herein.

49.     An individual is afforded Due Process under the 14th Amendment to the United States Constitution in regard to government confiscation of property.

50.     Plaintiff's two handguns are property to which he is afforded 14th Amendment Due Process protection.

51.     The City of Minneapolis, through the MPD, has a policy under which it will not return a handgun to its owner unless that same person is identified in the ATF database as the registered owner.

52.     The MPD has so far refused to return Plaintiff's handguns to him because the handguns are purported to be registered to persons other than the Plaintiff.  The MPD has stated that "[a]t this time we will not be releasing these firearms until true ownership can be determined."

53.     The MPD has previously returned the very same handguns to the Plaintiff after they were seized from his residence on November 18, 2008.  At that time, Plaintiff described how he came into possession of each handgun.  The

MPD is now refusing to return the handguns to the Plaintiff following their seizure in 2014.

54.     Plaintiff has no duty or obligation under the laws of Minnesota and the United States to register his handguns. Minn. Stat. § 624.714, Subd. 20(d); 26 U.S.C. § 5841.  Plaintiff was deprived of his property without a hearing before an impartial tribunal.  Plaintiff continues to be so deprived.

55.     As a result of the unlawful MPD policy of refusing to return handguns to an owner to whom the handguns are not registered in the ATF database, Plaintiff's Due Process rights were violated.  Plaintiff's Due Process rights were also violated by the MPD's failure to provide Plaintiff with any pre- or post-deprivation hearing before an impartial tribunal.  Plaintiff is entitled to recover damages and to other relief from the City of Minneapolis pursuant to 42 U.S.C. § 1983 and Monell, *supra*.

56.     As a result of Defendants' unlawful conduct, Plaintiff has experienced and continues to experience economic loss, humiliation, emotional distress, pain and suffering, and continues to be otherwise damaged due to the wrongful conduct of Defendants.

57.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to compensatory damages in an amount to be determined by a jury at trial, with interest, costs, disbursements, attorneys' fees, and other requested relief.

## Count V (Monell Claim)
## Fourteenth Amendment Violations - City of Minneapolis

58. Plaintiff incorporates the foregoing paragraphs as if set forth herein.

59. An individual is afforded Due Process under the 14th Amendment to the United States Constitution with regard to government confiscation of property.

60. Plaintiff's property is property to which he is afforded 14th Amendment Due Process protection.

61. Numerous items of personal property belonging to the Plaintiff were seized by the MPD in violation of the Plaintiff's rights. The property is identified at paragraph 11.

62. Defendants and their agents adopted and implemented a custom and policy pursuant to which Plaintiff was deprived of his personal property without a mechanism to contest the deprivation. Plaintiff's Due Process rights were violated by the MPD's failure to provide Plaintiff with any pre- or post-deprivation hearing before an impartial tribunal.

63. Until July 8, 2015, Defendants failed or refused to return to Plaintiff the personal property seized during the unreasonable searches and seizures above averred.

64. In so doing, Defendants and their agents, acting under color of law and their authority as public officers, have intentionally violated Plaintiff's rights to

Due Process of law under the Fourteenth Amendment to the Constitution of the United States.

65. Plaintiff has no other effective means of enforcing his Fourteenth Amendment rights other than be seeking the requested relief.

66. As a result of Defendants' unlawful conduct, Plaintiff has experienced and continues to experience economic loss, humiliation, emotional distress, pain and suffering, and continues to be otherwise damaged due to the wrongful conduct of defendants. Plaintiff is entitled to recover damages and to other relief from the City of Minneapolis pursuant to 42 U.S.C. § 1983 and Monell, *supra*.

67. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to compensatory damages in an amount to be determined by a jury at trial, with interest, costs, disbursements, attorneys' fees, and other requested relief.

## JURY DEMAND

68. Plaintiff demands a trial by jury on all counts so triable and any other such counts which may hereafter be alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bardin Frederick Schlitz respectfully requests the Court grant the following relief:

1. An order declaring that Defendants' actions, practices, customs and policies and those of all persons acting on their behalf and their agents and

employees, as alleged herein, were illegal and violated the Plaintiff's constitutional rights as to each claim;

2. An order directing Defendants to immediately return to Plaintiff all personal property previously seized;

3. A money judgment against Defendant City of Minneapolis and all other Defendants, jointly and severally, and with respect to the individual Defendants, in their individual and official capacities, for Plaintiff's general damages in an amount to be proven at trial and reasonably believed to exceed $50,000.00;

4. An injunction prohibiting Defendant City of Minneapolis and its employees and agents from seizing handguns from citizen-owners pursuant to its custom of seizing handguns for testing and analyses regardless of the reason for the seizure, and further prohibiting Defendant City of Minneapolis and its employees and agents from executing warrantless searches on seized handguns where there is no belief that the handgun shares any relation to any crime or wrongful act;

5. An injunction prohibiting Defendant City of Minneapolis and its employees and agents from retaining firearms pursuant to the terms of its customs and policies above averred, including but not limited to its "Firearms Release Protocol" (MPD Policy 10-416) and MPD Property and Evidence Unit Policy Number 30, effective date January 23, 2013;

6. An award against Defendant City of Minneapolis and all other Defendants, jointly and severally, and with respect to the individual Defendants, in their individual and official capacities, of Plaintiff's reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

7. An award against Defendant City of Minneapolis and all other Defendants, jointly and severally, and with respect to the individual Defendants, in their individual and official capacities, for the costs and expenses incurred by Plaintiff in bringing this action, and for prejudgment interest;

8. Leave of Court to amend the Complaint to include a claim for punitive damages; and

9. Any further and additional relief the Court deems just and equitable.

Respectfully Submitted,

MESHBESHER & ASSOCIATES, P.A.

Dated:  August 7, 2015        By:   s/ Steven J. Meshbesher
                                     Steven J. Meshbesher (# 127413)
                                     Adam T. Johnson (#390581)
                                     Richard E. Student (#390266)
                                     225 Lumber Exchange Building
                                     10 South Fifth Street
                                     Minneapolis, MN 55402
                                     Phone: (612) 332-2000
                                     *Attorneys for Plaintiff*